*Krys v. Farnum Place, LLC*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: MAY 21, 2014
DECIDED: SEPTEMBER 26, 2014

No. 13-3000

IN RE: FAIRFIELD SENTRY LIMITED
*Debtor.*

KENNETH KRYS, in his capacity as the duly appointed liquidator and foreign representative of Fairfield Sentry Limited,
*Appellant,*

*v.*

FARNUM PLACE, LLC,
*Appellee.*

————

Before: NEWMAN, WALKER, CABRANES, *Circuit Judges.*

————

Appeal from the July 3, 2013 order of the United States District Court for the Southern District of New York (Hellerstein, *J.*) affirming the January 10, 2013 order of the United States Bankruptcy

Court for the Southern District of New York (Lifland, *J.*) declining to conduct, in a Chapter 15 ancillary bankruptcy proceeding, a section 363 review of a sale of the claims of Fairfield Sentry Limited ("Sentry"), a British Virgin Islands investment fund, in the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA") because: (1) the sale does not involve a section 1520(a)(2) transfer; and (2) comity dictates deference to a British Virgin Islands Court's judgment approving the sale. Because we conclude that the sale of the SIPA claims is a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States," 11 U.S.C. § 1520(a)(2), and therefore the sale is subject to review under section 363, and comity is not warranted, we vacate and remand.

_____

PAUL D. CLEMENT, Bancroft PLLC, Washington, DC, (David J. Molton, May Orenstein, Daniel J. Saval, Marek Krzyzowski, Brown Rudnik LLP, New York, NY, on the brief) *for Appellant.*

KATHLEEN M. SULLIVAN (Robert C. Juman, Scott C. Shelley, Cleland B. Welton II, Eric D. Winston, Shane McKenzie, Matthew Scheck, on the brief*)*, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY *for Appellee.*

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Appeal from the July 3, 2013 order of the United States District Court for the Southern District of New York (Hellerstein, *J.*) affirming the January 10, 2013 order of the United States Bankruptcy Court for the Southern District of New York (Lifland, *J.*) declining to conduct, in a Chapter 15 ancillary bankruptcy proceeding, a section 363 review of a sale of the claims of Fairfield Sentry Limited ("Sentry"), a British Virgin Islands investment fund, in the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA") because: (1) the sale does not involve a section 1520(a)(2) transfer; and (2) comity dictates deference to a British Virgin Islands Court's judgment approving the sale. Because we conclude that the sale of the SIPA claims is a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States," 11 U.S.C. § 1520(a)(2), and therefore the sale is subject to review under section 363, and comity is not warranted, we vacate and remand.

4

## BACKGROUND

Sentry is a British Virgin Islands ("BVI") investment fund that invested approximately 95% of its assets with BLMIS, a limited liability company wholly owned by Bernard Madoff. In December 2008, Madoff, who is now in prison, revealed that he used customer funds to perpetuate a massive Ponzi scheme. Consequently, BLMIS collapsed and was placed into liquidation by the U.S. bankruptcy court under SIPA. Irving Picard was appointed trustee of BLMIS and charged with the task of overseeing the BLMIS liquidation and recovering stolen assets in this fraud.

Sentry filed three customer claims in the SIPA liquidation (collectively, the "SIPA Claim"), to which BLMIS objected. The BLMIS trustee countered with its own claims. Although Sentry's net losses in BLMIS were approximately $960 million, negotiations between Sentry and the BLMIS Trustee resulted in a settlement that allowed Sentry's SIPA Claim in the BLMIS liquidation in the amount of $230 million, subject to a cash payment of $70 million to be paid by Sentry to the BLMIS Trustee.

In July 2009, Sentry itself was placed into liquidation in the BVI (the "BVI Liquidation"), and the High Court of Justice of the

Eastern Caribbean Supreme Court (the "BVI Court") appointed appellant Kenneth Krys liquidator. On June 14, 2010, Krys filed a petition in the U.S. bankruptcy court seeking recognition of the BVI Liquidation as a "foreign main proceeding" under Chapter 15, 11 U.S.C. § 1517. On July 22, 2010, the bankruptcy court entered an order granting recognition. Upon recognition of the BVI Liquidation as a foreign main proceeding, an automatic stay was imposed on all proceedings against Sentry in the United States, including a derivative action brought by Morning Mist, a Sentry shareholder. The order of recognition was affirmed by the district court and subsequently by this Court. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127 (2d Cir. 2013).

Among Sentry's assets in the BVI Liquidation is the SIPA Claim. During the summer of 2010, an auction process to sell the SIPA Claim commenced. Appellee Farnum Place, LLC ("Farnum"), a limited liability corporation organized under the laws of Delaware, offered to purchase the SIPA claim for 32.125% of the claim's allowed amount. Farnum's bid was several percentage points higher than the other bids, and Krys accepted it. The transaction, however,

was subject to approvals by the BVI Court and the U.S. bankruptcy court.

In December 2010, Krys and Farnum negotiated, documented, and signed a trade confirmation (the "Trade Confirmation") setting forth the material terms and conditions of the sale of the SIPA Claim. The Trade Confirmation specifically stated that it is governed by the laws of the State of New York. The Trade Confirmation provided that the transaction was subject to approval by both the U.S. bankruptcy court and the BVI Court. The Trade Confirmation also provided that Sentry's liquidator, subject to its fiduciary duty and obligations, "shall endeavor to obtain promptly the approval of the BVI Court of the terms and conditions of this Trade Confirmation." J.A. 42.

Three days after the Trade Confirmation was signed, Irving Picard announced that he had entered into a settlement agreement with the estate of Jeffrey Picower for the forfeiture and repayment of approximately $7.2 billion, of which $5 billion would be paid to the BLMIS Trustee and $2.2 billion would be paid to the federal government. The influx of $5 billion to the BLMIS Trustee increased the value of Sentry's SIPA Claim from 32% to more than 50% of the

$230 million allowed amount of the claim (an increase of approximately $40 million).

In October 2011, because Krys had failed to submit an application asking the BVI Court to approve the terms of the Trade Confirmation, Farnum filed an application with the BVI Court seeking an order compelling Krys to satisfy the conditions of the Trade Confirmation, or, in the alternative, granting permission to commence proceedings against Sentry for specific performance. Krys asked the BVI Court not to approve the transfer to Farnum at the bid price because, given the sudden increase in the value of the SIPA Claim, it was not in the best interests of the Sentry estate. Krys also argued to the BVI Court that the Trade Confirmation required U.S. bankruptcy court approval pursuant to 11 U.S.C. §§ 1520(a)(2) and 363.

After a three-day evidentiary hearing, the BVI Court on March 27, 2012, "approve[d] the terms and conditions of the Trade Confirmation" and "the assignment to Farnum of Sentry's claim in the SIPA liquidation of BLMIS at the price stipulated for in the Trade Confirmation." J.A. 117. In its order, the BVI Court, fully cognizant of the required approval proceeding in the U.S. bankruptcy court,

stated "it would be unwise for [it] to express views on the issues that will arise for determination by the US Bankruptcy Court." J.A. 116. The BVI Court directed Krys "to take the necessary steps to bring before the US Bankruptcy Court the question of approval (or non-approval) by that Court of the Trade Confirmation." J.A. 117. And the BVI Court made "clear that it must be done in such a way that the US Bankruptcy Court is presented with a choice whether or not to approve it." *Id.*

On April 18, 2012, Krys filed an application with the United States Bankruptcy Court for the Southern District of New York, seeking review of the Trade Confirmation under 11 U.S.C. § 363(b) and an order disapproving the trade. On January 10, 2013, the bankruptcy court denied Krys's application. The bankruptcy court characterized the application for section 363 review as "seller's remorse" and a "last-ditch effort" to undo the transaction. *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 617, 618 (Bankr. S.D.N.Y. 2013). The bankruptcy court held that "a Section 363 review is not warranted under section 1520(a)(2) of the Code . . .," *id.* at 622, because the "[s]ale does not involve the transfer of an interest in property within the United States," as statutorily mandated by Chapter 15, *id.* at 618.

The bankruptcy court also stated that "comity dictates that this [c]ourt defer to the BVI Judgment." *Id.* at 628. And that "[f]ailing to grant such comity to the BVI Judgment under these circumstances 'necessarily undermines the equitable and orderly distribution of a debtor's property by transforming a domestic court into a foreign appellate court where creditors are always afforded the proverbial "second bite at the apple."'" *Id.* (quoting *SNP Boat Serv. Sa v. Hotel Le St. James*, 483 B.R. 776, 786 (Bankr. S.D. Fla. 2012)).

Krys appealed the denial of his application to the district court. After a hearing, the district court affirmed the bankruptcy court's decision. The district court stated that "[i]t is not clear that Section 363 . . . applies," however, "even if Section 363 applies," the bankruptcy court's "denial of the foreign representative's challenge was proper" because "[c]ourts should be loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, No. 13 Civ. 1524 (AKH) at *1, 2 (S.D.N.Y. Jul. 3, 2013) (internal quotation marks omitted). This appeal followed.

**DISCUSSION**

"An appeal from a district court's review of a bankruptcy court ruling is subject to plenary review." *Warex Terminals Inc. v. Halstead Energy (In re Halstead Energy Corp.)*, 367 F.3d 110, 113 (2d Cir. 2004). We review a bankruptcy court's conclusions of law *de novo* and its findings of fact under the clearly erroneous standard. *Id.* at 114.

The primary question before this Court is whether the bankruptcy court was required to conduct a review under section 363, which "requires that a judge . . . expressly find from the evidence presented before him at the hearing a good business reason" to approve the sale. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). The bankruptcy court recognized the BVI Liquidation as a "foreign main proceeding," which protects Sentry's United States assets from creditor action and allows Krys to obtain the rights and benefits of Chapter 15. An asset sale in a Chapter 15 bankruptcy proceeding requires section 363 review of the sale if it is a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(2). The question here thus turns on whether the SIPA Claim is such a

transfer of an interest. We must also consider whether considerations of comity, codified in Chapter 15, require deference to the BVI Court's judgment approving the transfer, irrespective of whether section 1520(a)(2)'s territorial prerequisite has been satisfied.

## I. Application of Section 1502(a)(2)

In considering whether section 363 review is required in an ancillary U.S. bankruptcy proceeding when there is a "foreign main proceeding," section 1520(a)(2) instructs the bankruptcy court to apply section 363 to a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate." 11 U.S.C. § 1520(a)(2).

The parties dispute whether the sale of the SIPA Claim involves a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States." Krys argues that section 1520(a)(2)'s territorial prerequisite is satisfied because: (1) the SIPA Claim is an interest in the BLMIS Fund, which is property located in the United States; and (2) the SIPA Claim itself is property located in the United States. Farnum maintains that (1) the

relevant "property" is the SIPA Claim itself, not the BLMIS Fund; and (2) that the SIPA Claim is in the BVI and thus not located within the territorial jurisdiction of the United States.

We agree with Farnum that the "property" is the SIPA Claim itself, not the BLMIS Fund. The SIPA Claim is not an ownership interest in the BLMIS Fund. By selling its SIPA Claim, Sentry is not transferring a claim or right to the BLMIS Fund; it is selling Sentry's "rights, title and interest in and to [Sentry's] claims against BLMIS" in the BLMIS proceedings. Trade Confirmation, J.A. 33. In other words, the SIPA Claim is a "chose in action." *See Black's Law Dictionary* 294 (10th ed. 2014) (defining "chose in action" as "[t]he right to bring an action to recover a debt, money, or thing").

But we disagree with Farnum and the bankruptcy court that the SIPA Claim is not within the territorial jurisdiction of the United States. "Within the territorial jurisdiction of the United States" is defined in section 1502(8) as:

> [T]angible property located within the territory of the United States and intangible property deemed under applicable nonbankruptcy law to be located within that territory, including any property subject to attachment or garnishment that may properly be seized or garnished by an action in a Federal or State court in the United States.

13

11 U.S.C. § 1502(8).

The bankruptcy court held that "under applicable nonbankruptcy law" (agreed by the parties to be the law of New York), the situs of the intangible SIPA Claim is the BVI. The bankruptcy court relied on the "common sense appraisal of the requirements of justice and convenience" annunciated in *Severnoe Sec. Corp. v. London and Lancashire Insurance Co.*, 255 N.Y. 120, 123-24 (1931), to determine the location of the SIPA Claim. *In re Fairfield Sentry Ltd.*, 484 B.R. at 624. In applying the *Severnoe* test, the bankruptcy court concluded that "justice, convenience and common sense dictate . . . that the SIPA Claim is located with the debtor in the BVI." *Id.* at 625. The bankruptcy court's analysis, however, was incomplete. Section 1502(8) deems "any property subject to attachment or garnishment that may be properly seized or garnished by an action in" a United States court to be "within the territory of the United States." 11 U.S.C. § 1502(8).

The SIPA Claim here is subject to attachment or garnishment and may be properly seized by an action in a Federal or State court in the United States. Under New York law, "any property which could be assigned or transferred" is subject to attachment and

14

garnishment. N.Y. C.P.L.R. §§ 5201(b), 6202. For attachment purposes, with respect to intangible property that has as its subject a legal obligation to perform, the situs is the location of the party of whom that performance is required pursuant to that obligation. In *ABKCO Industries, Inc. v. Apple Films, Inc.*, 350 N.E.2d 899 (N.Y. 1976), "[the New York Court of Appeals] recognized that a contractual agreement could constitute contingent property interests attachable and assignable, and thus subject to CPLR 5201(b)." *Verizon New England, Inc. v. Transcom Enhanced Servs., Inc.*, 990 N.E.2d 121, 124 (N.Y. 2013). Here, although Sentry and the SIPA Trustee do not have a contractual relationship, the SIPA Trustee is statutorily obligated to distribute to Sentry its pro rata share of the recovered assets. Therefore the situs of the SIPA Claim is the location of the SIPA Trustee, which is New York.

Farnum argues that even if the SIPA Claim's situs is New York, the claim may not be "properly seized by an action" in a United States court because such action would be stayed by the BVI Court, *see* BVI Insolvency Act, 2003 § 175(1)(c), and the U.S. bankruptcy court, *see* 11 U.S.C. §§ 362, 1520(a)(1). But this argument would render the "subject to attachment or garnishment" phrase of

section 1502(8) a nullity. "[W]e must construe [a] statute 'so that no part will be inoperative or superfluous, void or insignificant.'" *Gordon v. Softech Int'l., Inc.*, 726 F.3d 42, 48 (2d Cir. 2013) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). There is always an automatic stay in bankruptcy proceedings so it would make no sense if the existence of a stay could affect the construction of the term "interest" under section 1502(8). Moreover, the statute speaks of property "deemed under applicable *nonbankruptcy* law" to be subject to attachment or garnishment. 11 U.S.C. § 1502(8) (emphasis added). This provision thus cannot be read to mean that the determination of whether section 363 review is necessary can be affected by factors that are the quintessential features of *bankruptcy* law: the existence of the automatic stay under sections 362 and 1520(a)(1) or, in a proceeding ancillary to a foreign proceeding under section 1517, the automatic stay provisions of the foreign jurisdiction.

Therefore we conclude that the sale of the SIPA Claim is a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States," 11 U.S.C. § 1520(a)(2),

16

and that pursuant to section 1520(a)(2) the bankruptcy court must apply section 363.

## II. Comity

As an additional reason for denying section 363 review, the bankruptcy court held that the role of comity, codified in Chapter 15, dictates deference to the BVI Court's judgment approving the sale.

Congress specifically directed courts, "[i]n interpreting [Chapter 15], . . . [to] consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508. But, "Chapter 15 does impose certain requirements and considerations that act as a brake or limitation on comity." *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012) (stating that comity is "an important factor in determining whether relief will be granted" under Chapter 15, but is not a *per se* rule). The express statutory command that, in a Chapter 15 ancillary proceeding, the requirements of section 363 "apply . . . *to the same extent*" as in Chapter 7 or 11 proceedings, 11 U.S.C. § 1520(a)(2) (emphasis added), is one such limitation. "[W]hen a statute's language is plain,

the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Sebelius v. Cloer*, 133 S. Ct. 1886, 1896 (2013) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (alteration omitted). The language of section 1520(a)(2) is plain; the bankruptcy court is *required* to conduct a section 363 review when the debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States.[1]

Moreover, it is not apparent at all that the BVI Court even expects or desires deference in this instance. The BVI Court expressly declined to rule on whether the Trade Confirmation required approval under section 363.[2]

---

[1] Notably, the automatic application of section 363 pursuant to section 1520(a)(2) expressly deviates from the discretionary grant of relief that "may be granted" upon filing a petition for recognition of a foreign proceeding pursuant to section 1519, and upon recognition of a foreign proceeding pursuant to section 1521. This contrast further suggests that the statutory requirement that section 363 apply automatically acts as a "brake or limitation on comity" in the circumstances presented here. *In re Vitro S.A.B. de C.V.*, 701 F.3d at 1054.

[2] On March 27, 2012 the BVI Court issued a judgment stating that: (1) "it would be unwise . . . to express views on the issues that will arise for determination by the US Bankruptcy Court," J.A. 116; (2) "[i]f [the U.S. bankruptcy court] decides, for whatever reason, to withhold approval of the Trade Confirmation, that will bring the Trade Confirmation to an end" *id.*; (3) the BVI Court "direct[s] [Krys] to take the necessary steps to bring

18

Therefore we conclude that the bankruptcy court erred when it gave deference to the BVI Court's approval of the transfer of the SIPA Claim and failed to conduct a review under section 363.

**III.   Section 363 Review**

As stated above, the sale of the SIPA Claim is a "transfer of an interest of the debtor in property within the territorial jurisdiction of the United States" within the meaning of 11 U.S.C. § 1520(a)(2). The language of the statute makes it plain that the bankruptcy court was required to conduct a section 363 review. Deference to the BVI Court was not required. We therefore vacate and remand to the district court with instructions to remand to the bankruptcy court to conduct the section 363 review.

While we intimate no view on the merits of the section 363 review on remand, we provide some guiding principles from our case law. We have held that "a judge determining a § 363(b) application [is required to] expressly find from the evidence presented before him at the hearing a good business reason to grant

---

before the US Bankruptcy Court the question of *approval (or non-approval)* by that Court of the Trade Confirmation," *id.* at 117; and (4) the necessary steps "must be done in such a way that the US Bankruptcy Court is presented with a *choice whether or not to approve it*," *id.* (emphasis added).

19

such an application." *In re Lionel Corp.*, 722 F.2d at 1071. "In fashioning its findings, a bankruptcy judge . . . should consider all salient factors pertaining to the proceeding . . . ." *Id.* Such salient factors include "whether the asset is increasing or decreasing in value." *Id.* We have also recognized that bankruptcy courts must have "broad discretion and flexibility . . . to enhance the value of the estates before it." *Consumer News & Bus. Channel P'ship v. Fin. News Network Inc. (In re Fin. News Network Inc.)*, 980 F.2d 165, 169 (2d Cir. 1992). And we have recognized also that the bankruptcy court's "principal responsibility . . . is to secure for the benefit of creditors the best possible bid." *Id*.

Applying this framework here, we note that the bankruptcy court must consider as part of its section 363 review the increase in value of the SIPA Claim between the signing of the Trade Confirmation and approval by the bankruptcy court. *Cf. In re Martin*, 91 F.3d 389 (3d Cir. 1996) (upholding a bankruptcy court's order denying approval of a stipulation agreement after debtors were victorious in a state court litigation filed in violation of the stipulation agreement); *In re Broadmoor Place Invs.*, 994 F.2d 744, 746 (10th Cir. 1993) (finding that a bankruptcy court has "power to

disapprove a proposed sale . . . if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable"). Nothing in the language of section 363 or our case law limits the bankruptcy court's review to the date of signing the Trade Confirmation.

## CONCLUSION

Accordingly, we VACATE the district court's July 3, 2013 order affirming the bankruptcy court's order denying Krys's application for section 363 review and REMAND to the district court with instructions to REMAND to the bankruptcy court for such review.